**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **CRIMINAL ACTION** |
| v. | : | |
| | : | **No. 11-393** |
| WHEELER ZAMICHIELI | : | |

**MEMORANDUM**

**Schiller, J.**                                                              **December 9, 2011**

In a one-count indictment, the Government charged Wheeler Zamichieli as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Philadelphia police officers recovered the weapon underlying the charge during a traffic stop. Zamichieli now moves to suppress the gun that police found in the car he was driving, arguing that the officers' actions constituted an illegal search and seizure in violation of the Fourth Amendment. Zamichieli also seeks to suppress statements he made to the police after he was pulled over. The Court held a hearing on the motion on November 21, 2011. For the reasons that follow, the Court grants the motion.

I.       **BACKGROUND**

At approximately 2:27 in the morning on February 20, 2011, Philadelphia Police Department Officers William Andrews and Melvin Victor were driving back to their district, having responded to several shootings in the adjacent district. (Nov. 21, 2011 Hr'g Tr. at 23-25, 45-46, 53.) At the intersection of Wister Street and West Nedro Avenue, the officers saw a red Chevrolet Impala speed through a stop sign and almost hit their patrol car. (*Id.* at 25, 46.) They turned on their lights and sirens and followed the Impala until it turned the wrong way on a one-way street and stopped. (*Id.* at 25, 46-47.) The officers testified that this was a normal traffic stop and that they were no longer

searching for suspects in the shootings at the time. (*Id.* at 30, 53-54.)

Officer Andrews approached the Impala on the passenger side, Officer Victor on the driver side. (*Id.* at 26.) Officer Victor testified that the driver of the Impala, later identified as Zamichieli, turned on the interior dome light as the officers approached. (*Id.* at 47.) Zamichieli denied ever turning on the dome light. (*Id.* at 65.) Zamichieli turned and stuck his head out of the open window on the driver side, resting both arms on the window frame so that his body was facing Officer Victor, and asked why he had been pulled over. (*Id.* at 47-48.)

Officer Andrews testified that he scanned the interior of the car as he approached, saw a .38 revolver sitting in plain view on the front passenger seat of the car, and yelled "Gun" to alert his partner. (*Id.* at 26, 47.) Officer Victor removed Zamichieli from the Impala, handcuffed him, and placed him in the back of the patrol car while Officer Andrews retrieved the firearm, which contained five spent shell casings. (*Id.* at 26, 49-50.) Officer Victor never saw where Officer Andrews found the gun. (*Id.* at 57-58.) Both officers testified that Zamichieli was cooperative at all times during the stop and did not make any suspicious or furtive movements. (*Id.* at 26, 36, 56.) The officers issued two citations for Zamichieli's traffic violations. (Gov't's Ex. 1; Nov. 21, 2011 Hr'g Tr. at 51-52.)

At the hearing, Zamichieli disputed Officer Andrews's claim that the gun was on the front passenger seat and testified that the gun was actually secreted under the front passenger seat. (*Id.* at 65, 70.) According to Zamichieli, the officers pulled him out of the car with guns drawn before conducting a search. (*Id.* at 64.) The defense introduced into evidence a picture of the Impala, allegedly taken the month before the traffic stop, showing that the car had tinted windows. (Def.'s Ex. 2; Nov. 21, 2011 Hr'g Tr. at 63.) Zamichieli also testified that the car doors and passenger-side

window were closed when the officers approached.  (*Id.* at 65.) Neither officer could remember whether the windows were tinted or whether the passenger-side window was up or down during the traffic stop. (*Id.* at 28-29, 38, 57-58.) Officer Victor confirmed that he did not ask for a driver's license, registration, or proof of insurance while Zamichieli was in the car. (*Id.* at 59-60.)

## II.      STANDARD OF REVIEW

The movant bears the burden of proving, by a preponderance of the evidence, that the evidence in question should be suppressed. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (citing *United States v. Acosta*, 965 F.2d 1248, 1256 n. 9 (3d Cir. 1992)). "However, once the defendant has established a basis for his motion, *i.e.*, the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable." *Johnson*, 63 F.3d at 245.

## III.     DISCUSSION

The initial traffic stop was lawful. "It is well-established that a traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations." *United States v. Moorefield*, 111 F.3d 10, 12 (3d Cir. 1997). In this case, the officers observed Zamichieli speed through a stop sign and drive the wrong way down a one-way street, both traffic violations under Pennsylvania law. *See* 75 Pa. Cons. Stat. §§ 3323(b); 3308(b).

Nonetheless, Zamichieli argues that the search and seizure of the gun during the traffic stop violated his Fourth Amendment rights. Weighing the evidence presented, the Court finds the officers' version of the story implausible. There was no reason for Zamichieli to turn on the dome

3

light when he had already opened the driver-side window to speak with Officer Victor and was not asked to provide his paperwork—nor is it likely that Zamichieli would do so with a gun sitting in plain view on the front passenger seat. Without the dome light on, it would be nearly impossible for Officer Andrews to see a gun on the front seat through a closed, tinted window in the dark of night. The Court therefore credits Zamichieli's testimony that the gun was under the front passenger seat. Because the gun was not in plain view, the only way for the officers to find the it was to search the vehicle. Absent an applicable exception, the officers were not permitted to conduct a warrantless search of the Impala without probable cause to believe it contained evidence of criminal activity. *See United States v. Burton*, 288 F.3d 91, 100 (3d Cir. 2002). The Government has not met its burden of showing that the search was reasonable.

The Government argues that once Officer Andrews saw the gun in plain view, the officers had probable cause to arrest Zamichieli for carrying a firearm without a license and, as a result, they were authorized to conduct a search incident to the arrest. (Gov't's Opp. to Def.'s Mot. to Suppress Physical Evidence and Statements and Mot. in Limine Seeking Severance at 7.) "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (internal quotation marks omitted). The search of "a vehicle incident to a recent occupant's arrest" is lawful "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search," or "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 1719 (2009). Zamichieli was not arrested for traffic violations, but rather for carrying a firearm without a license.

4

Because the Court has found that the gun was not in plain view, the officers only had probable cause to arrest Zamichieli for an offense related to the gun after searching the vehicle.  Therefore, the exception to the probable cause requirement for searches incident to arrest does not apply because there was no probable cause to arrest prior to the search. *See Knowles v. Iowa*, 525 U.S. 113, 118-19 (1998) (holding that the exception does not apply when a police officer has probable cause to believe the defendant has committed a traffic offense but only issues a citation); *Smith v. Ohio*, 494 U.S. 541, 543 (1990) ("[The exception] does not permit the police to search any citizen without a warrant or probable cause so long as an arrest immediately follows.").

During a traffic stop, an officer is also entitled to "conduct a search of the passenger compartment, if he has a reasonable suspicion that the occupants might be armed and dangerous." *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004) (citing *Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983)). "The court measures the reasonableness of the officer's suspicion by taking into account the totality of the circumstances." *United States v. Focareta*, 283 F. App'x 78, 83 (3d Cir. 2008) While the test is an objective one, "[t]he searching officer's subjective beliefs are part of the totality of the circumstances that the court examines when determining whether there was an objective basis" for the search. *Id.* at 84. Officers Andrews and Victor testified that this was a normal traffic stop and that Zamichieli was cooperative and made no suspicious or furtive movements. Without any objective basis to believe that Zamichieli was armed and dangerous, the officers lacked reasonable suspicion to search the Impala. Accordingly, this exception to the probable cause requirement is also inapplicable.

Because the search was conducted in violation of Zamichieli's Fourth Amendment rights, all evidence obtained in connection with the search, including the gun and any statements made by

5

Zamichieli following the search, must be suppressed as fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

**IV.    CONCLUSION**

The weapon underlying the charge against Zamichieli was obtained through an illegal search. As a result, the motion to suppress must be granted. An appropriate Order will be docketed separately.